IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

REX LEE LARSEN,                                 Case No. 6:11-cv-01324-HU

                    Petitioner,            FINDINGS AND RECOMMENDATION

        v.

JEFF PREMO,

                    Respondent.

Per C. Olson
Megan E. McVicar
HOEVET BOISE & OLSON, P.C.
1000 S.W. Broadway, Suite 1500
Portland, OR 97205

        Attorneys for Petitioner

Mary H. Williams
Deputy Attorney General
Samuel A. Kubernick
Assistant Attorney General
Department of Justice
1162 Court Street N.E.
Salem, OR 97301-4096

        Attorneys for Respondent

HUBEL, Magistrate Judge

1 -- FINDINGS AND RECOMMENDATION

Petitioner, an inmate at the Oregon State Penitentiary, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254. For the reasons set forth below, petitioner's habeas petition (#2) should be denied.

### BACKGROUND

### I.   Aggravated Murder Conviction

In October, 1978, petitioner was convicted of Aggravated Murder, as well as Rape in the First Degree, Sodomy in the First Degree, two counts of Kidnapping in the First Degree, Felon in Possession of a Firearm, and Escape in the Second Degree. *State v. Larsen*, 44 Or. App. 643, 645, 606 P.2d 1159 (1980); Resp. Exh. 101 at 20-21.

The facts underlying his conviction were summarized previously by the Oregon Court of Appeals as follows:

> Defendant, an Oregon State Penitentiary inmate, was living at the work release center in Eugene. On the morning of February 2, 1978, he checked out of the center to go to Lane Community College, but never returned to the center. On the evening of February 3, 1978, he hired cab driver Paul Caves to drive him from Eugene to Florence, Oregon. Before leaving Eugene, Caves and defendant picked up Caves' girlfriend, Carol, and attempted unsuccessfully to obtain female companionship for defendant. While driving on the coast highway, Caves pulled the cab to the side of the road so defendant could get out momentarily. After two to three minutes, defendant suddenly reappeared, opened the back door of the cab and shot Caves twice in the head. Displaying a handgun, he pulled Carol out of the car and then off the road after she tried to flag down oncoming vehicles. After retrieving his duffel bag from the cab, defendant pushed Carol up an embankment, took a chain from the duffel bag, placed it around her neck and secured it with

a padlock.  He then chained Carol to a tree and returned
to the cab.  When he came back to Carol, he unfastened
the chain from the tree, padlocked it through the duffel
bag and moved Carol up a hill.  After they stopped,
defendant forced Carol to perform oral sodomy upon him
and to have sexual intercourse.  Subsequently, defendant
abandoned  Carol,  who  walked  to  the  highway  and
encountered the police.  Paul Caves died from the gunshot
wounds.

Id. at 645-46; see also Resp. Exh. 128 at 3-5.[1]

Petitioner was sentenced to life imprisonment, with a 20-year

minimum term without the possibility of parole.  Petitioner's

convictions were affirmed on appeal, with the exception that the

case was remanded to modify the statutory basis for his conviction

for Felon in Possession of a Firearm.  Larsen, 44 Or. App. at 652.

In the instant proceeding, petitioner does not challenge the

constitutionality of his conviction.  Rather, he challenges a March

23, 2007, decision by the Oregon Board of Parole and Post-Prison

Supervision (board), denying him release on parole.

## II.  **Relevant Statutes and Board Rules**

### A.  **Statutes**

At the time petitioner committed his offenses, ORS 144.120

(1977) provided:

---

[1] Petitioner also attempted to rape a woman at Lane
Community College on February 2, 1978 (the previous evening).
See Resp. Exh. 128 at 4; Resp. Exh. 133 (Appellate Record at 87 &
643-44) & Resp. Exh. 134 at 22.  He was convicted of Attempted
Rape in the First Degree for that offense.  Resp. Exh. 101 at 19.

> (1) Within six months of the admission of a prisoner to
> any state penal or correctional institution, the board
> shall conduct a parole hearing to interview the prisoner
> and **set the initial date of his release on parole**
> pursuant to subsection (2) of this section. Release shall
> be contingent upon satisfaction of the requirements of
> section 6 of this Act.

1977 Oregon Laws, Chap. 372, § 5 (emphasis added). The terms of the statute required the board to conduct a parole hearing for a prisoner (even if convicted of aggravated murder). *State ex rel. Engweiler v. Felton*, 350 Or. 592, 621, 260 P.3d 448 (2011) (construing 1989 version of statute).[2]

Additionally, ORS 163.105 (1977) provided that *notwithstanding the provisions of ORS Chapter 144*:

> (2) When a defendant is convicted of murder defined
> as aggravated murder pursuant to subsection (2) of
> section 1 of this Act, the court shall order that the
> defendant shall be confined for a minimum of 20 years
> without possibility of parole, release on work release,
> temporary leave or employment at a forest or work camp.
>
> (3) **At any time after . . . . 15 years from the date
> of imposition of a minimum period of confinement pursuant
> to subsection 2 of this section, the State Board of
> Parole, upon the petition of a prisoner so confined,
> shall hold a hearing to determine if the prisoner is
> likely to be rehabilitated within a reasonable period of
> time.  The sole issue shall be whether or not the
> prisoner is likely to be rehabilitated within a
> reasonable time.**

---

[2] In 1991, ORS 144.120(1)(a) was amended to exclude aggravated murders from the *timing requirement* for a parole hearing.  1991 Oregon Laws, Chap. 126, § 6; *State ex rel. Engweiler,* 350 Or. at 623-26.

1977 Oregon Laws, Chap. 370, § 2 (emphasis added); *see also* ORS 144.110(2)(b) (1977), 1977 Oregon Laws, Chap. 372, §5.    If the board finds that the prisoner is capable of rehabilitation within a reasonable time, the terms of his confinement are changed to life imprisonment, with the possibility of parole.    ORS 165.105(4) (1977).

**B.    Board Rules Governing Parole Term Hearings**[3]

**1.    Division 30 Rules**

In 1979, the board promulgated Division 30 of the Oregon Administrative Rules implementing ORS 144.120. Administrative Rule 255-30-010 (1979), provided that every prisoner initially incarcerated at an Oregon Department of Corrections institution shall be given a prison term hearing, no later than six months after admission, to establish a "prison term." Administrative Rule 255-30-005 (1979), in turn, defined "prison term" as "[t]he actual amount of time the Board determines a prisoner will serve when it sets a parole release date."

In 1981, OAR 255-30-012 was added to specifically provide that aggravated murderers would be given a prison term hearing within six months of incarceration in order to "make necessary findings such as history/risk score, aggravation or mitigation and shall establish the maximum period of confinement and first eligibility

---

[3] The referenced historical board rules are found in petitioner's Supp. Exhibits (Doc. #49).

for a hearing under ORS 163.105(3)." In 1985, the board promulgated rules removing aggravated murderers from Division 30 rules, and adopting OAR Division 32 to specifically apply to prisoners convicted of aggravated murder.

### 2. Division 32 Rules

Pursuant to OAR 255-32-005 (1985), an aggravated murderer continued to receive a prison term hearing under the provisions of Division 30. Additionally, OAR 255-32-015 & OAR 255-32-020 were adopted to provide a hearing (within 20 years of a 30-year minimum, or within 15 years of a 20-year minimum), for the sole purpose of determining whether the prisoner is likely to be rehabilitated within a reasonable period of time.

In 1989, OAR 255-32-005 was amended to provide that at a prison term hearing, an aggravated murderer would receive a "review date," rather than a parole "release date," congruent with his minimum term of incarceration. In 1991, the rule was amended to remove any reference to Division 30, and no longer referred to the hearing as a "prison term" hearing. In 1993, OAR 255-32-020 was amended to include criteria "indicating whether the inmate is likely to be rehabilitated."

## III. Parole Board Proceedings

A review of the board action taken in response to petitioner's 1978 conviction for aggravated murder is necessary to the resolution of petitioner's *ex post facto* claims.

- **Board Action Form (BAF) 1**

On July 3, 1986, after petitioner repeatedly waived his right
to an initial prison term hearing, the board held a hearing and set
petitioner's matrix sentencing range at 168 to 228 months (14 to 19
years), sustained his 20-year minimum term, and established a
parole "*release date*" of February 7, 1998 (following 240 months
incarceration).   Resp.  Exh.  133  (Appellate  Record  at  47).
*Additionally*, the board noted that petitioner was convicted of
aggravated murder under ORS 163.095(1), and "[a]t any time after
fifteen years from the date of imposition of a minimum period of
confinement, the Board of Parole, upon petition, shall hold a
hearing to determine if the prisoner is likely to be rehabilitated
within a reasonable period of time."   *Id.*

- **BAF 2 & Administrative Review Response (ARR) 1**

In February, 1990, the board issued ARR 1 & BAF 2 stating that
petitioner's parole "release date" was set in error because "[t]he
board does not have the authority to set parole release dates for
prisoners sentenced for aggravated murder unless the prisoner is
first found likely to be rehabilitated within a reasonable period
of time."   *Id.* at 49 & 52.   The board noted that this finding
cannot be made until petitioner served 15 years of his 20-year
minimum sentence.  *Id.*  Accordingly, petitioner's February 7, 1998
"release date" was rescinded and a parole "review date" was set for
the same date.   *Id.*

- **BAF 4 & ARR 3**

In July, 1992, the board reiterated that the February 7, 1998, date previously set by the Board would be a "review date" due to petitioner's aggravated murder conviction. *Id.* at 59-60. The board stated that "[a]t anytime after 15 years from the date of imposition of a minimum period of confinement, the Board of Parole, upon petition shall hold a hearing to determine if the prisoner is likely to be rehabilitated within a reasonable period of time." *Id.* at 59.

- **BAF 7 & 10, & ARR 4**

On May 4, 1994, after petitioner had served 15 years, the board held a hearing and concluded that petitioner was not likely to be rehabilitated within a reasonable period of time. Consequently, no change was made to his February 7, 1998, parole review date. *Id.* at 70 (BAF 7).[4]

On September 29, 1998, after petitioner had served 20 years, the board again held that petitioner was not likely to be rehabilitated within a reasonable period of time. *Id.* at 78-81 (BAF 10 & ARR 4). Petitioner sought judicial review, arguing that ORS 163.105 is *no longer applicable* to him because he had served his 20-year minimum sentence for aggravated murder. After

---

[4] However, the Board later noted a calculation error which resulted in petitioner's parole review date to change from February 7, 1998, to February 8, 1998. Resp. Exh. 133 (App. Rec. at 73).

examining the statutory language, the Oregon Court of Appeals found petitioner's argument "implausible," holding that nothing in ORS 163.105 gives the board authority to alter the terms of confinement to permit the possibility of parole for an aggravated murderer *in the absence of a finding that he or she is likely to be rehabilitated within a reasonable period of time.* *Larsen v. Bd. of Parole and Post-Prison Supervision*, 191 Or. App. 526, 533-35, 84 P.3d 176 (2004). The court explained:

> We note that ORS 163.105 applies, without restriction, to all persons convicted of aggravated murder under ORS 163.095(1) and (2), and does so "[n]otwithstanding the provisions of ORS chapter 144." That "notwithstanding" clause undermines petitioner's argument that he should be subject to the parole statutes contained in ORS chapter 144 despite his conviction for aggravated murder under ORS 163.095(2). As noted above, ORS 163.105(4) indicates that, *if* the board finds that an inmate is capable of rehabilitation, *then* the board should change the terms of confinement "to life imprisonment with the possibility of parole, or work release." Nothing in ORS 163.105 gives the board authority to alter the terms of confinement to permit the possibility of parole or work release for an aggravated murder[er] in the absence of the finding required by ORS 163.105(4).

> \* \* \* \* \*

> [E]ven if we were to accept petitioner's *premise* that ORS 163.105 contemplates hearings on rehabilitation only between the fifteenth and twentieth years of an aggravated murder sentence, his *conclusion* that he would be eligible for parole pursuant to ORS chapter 144 after serving 20 years of the sentence does not follow from that premise, given that ORS 144.110(2)(b) (1977) prohibits the board from paroling him except as provided in ORS 163.105.

191 Or. App. at 533-35 (*emphasis in original*).  The Oregon Supreme Court denied review.  337 Or. 248, 95 P.3d 729 (2004).

> • **BAF 12 & ARR 5**

On October 23, 2002, the board again held that petitioner was not likely to be rehabilitated within a reasonable period of time. Resp. Exh. 133 (App. Rec. at 85).  The board adhered to its decision in ARR 5.  *Id.* at 87-88.  Petitioner sought judicial review.  In *Larsen v. Bd. of Parole and Post-Prison Supervision*, the Court of Appeals agreed with petitioner that a parole hearing must comply with the contested hearing requirements of Oregon's Administrative Procedures Act, and remanded for a new hearing.  206 Or. App. 353, 138 P.3d 16 (2006), *rev. denied*, 348 Or. 13 (2010). More importantly to this proceeding, however, the Court summarily rejected petitioner's re-assertion that he is no longer subject to the likelihood of rehabilitation requirement because he had served his 20-year minimum term.  The Court noted that it had previously rejected that argument in *Larsen v. Bd. of Parole*, 191 Or. App. 526.  *Larsen*, 206 Or. App. at 367.

> • **BAF 13 & ARR 7**

On February 28, 2007, the board again conducted a hearing to determine whether petitioner was likely to be rehabilitated within a reasonable period of time.  Resp. Exh. 133 (App. Rec. at 617-667).  On March 23, 2007, the board issued a final order, incorporated into BAF #13, concluding that petitioner was not

10 -- FINDINGS AND RECOMMENDATION

likely to be rehabilitated within a reasonable period of time. Resp. Exh. 124 at 3-13.

Petitioner sought administrative review on multiple grounds (Resp. Exh. 133, App. Rec. 680-702), which were answered by the board in ARR #7. That order provides in relevant part:

> [Y]ou allege that OAR 255-032-0020 is unconstitutionally vague . . . . You also argue that applying this rule to your case is an ex post facto violation, in that the criteria in the rule were adopted October 29, 1993. As explained below, the Board has considered your arguments and denies relief.
>
> [N]othing in the criteria listed in the Board's rule impermissibly alters the substance embodied by ORS 163.105(1977) and applied by the Board at your hearing.
>
> * * * * *
>
> You also raise a number of issues relating to a Board action taken many years ago (BAF #2 dated February 13, 1990). The Board declines to reopen and reconsider BAF #2 based on the information that you have provided the Board in your request.

Resp. Exh. 133 (App. Rec. at 704-07).

The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. *Larsen v. Bd. of Parole and Post-Prison Supervision*, 243 Or. App. 389, 256 P.3d 1099, *rev. denied*, 350 Or. 573 (2011).

## **STANDARDS**

A petition for writ of habeas corpus, filed by a state prisoner, shall not be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication

resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law"; or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1) & (2); *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011). The petitioner carries the burden of proof. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

A state court decision involves an unreasonable application of clearly established Federal law if it correctly identifies the governing legal standard, but unreasonably applies it to the facts of the prisoner's case. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). An unreasonable application of federal law is different from an incorrect application. *Harrington*, 131 S.Ct. at 785; *White v. Woodall*, 134 S.Ct. 1697, 1702 (2014). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S.Ct. at 786-87 (*quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *White*, 134 S.Ct. at 1706-07; *Burt v. Titlow*, 134 S.Ct. 10, 16 (2013).

## DISCUSSION

Petitioner challenges the legality of BAF #13, issued by the board on March 23, 2007. Habeas Petition (#2) at 1. Petitioner sets forth the following six grounds for relief: (1) he was denied

12 -- FINDINGS AND RECOMMENDATION

an impartial parole board and/or the board chairman had *ex parte* communications; (2) he was denied the right to confront witnesses; (3) state sentencing guidelines and board rules requiring him to show that he is likely to be rehabilitated within a reasonable time, after the expiration of his minimum sentence, violate the prohibition against *ex post facto* laws; (4) he is imprisoned despite having completed his matrix range of 168-212 months set by the board on July 3, 1986, and his 20-year minimum sentence; (5) O.R.S. 163.105 (1977) is unconstitutionally vague; and (6) O.A.R. 255-032-0020 is unconstitutionally vague and constitutes an *ex post facto* law as applied to him.

Respondent moves the court to deny habeas relief on the basis that (1) petitioner provides no argument on grounds two and five and, therefore, he has failed to carry his burden of proof on those claims; (2) grounds three, four, and six are untimely and procedurally defaulted; (3) ground one was rejected by the state court in a decision that is not objectively unreasonable; and (4) all of petitioner's claims lack merit.

I.   **Grounds Two and Five**

In ground for relief two, petitioner alleges that he was denied the right to confront witnesses who authored three reports allegedly relied upon by the board. Habeas Petition at 6-7. In ground for relief five, petitioner alleges that ORS 163.105 (1977) is unconstitutionally vague because it does not define

13 -- FINDINGS AND RECOMMENDATION

"rehabilitation" or "reasonable period of time."  I agree with respondent that because petitioner has not addressed these claims in his supporting or reply briefs, he has failed to sustain his burden of proving that habeas relief is warranted.  Accordingly, relief on these grounds should be denied summarily.

## II.  Grounds for Relief Three, Four and Six (*Ex Post Facto* & Due Process

The *Ex Post Facto* Clause of the U.S. Constitution bars "enactments which, by retroactive operation, increase the punishment for a crime after its commission."  *Garner v. Jones*, 529 U.S. 244, 249 (2000); *Cal. Dep't. of Corr. v. Morales*, 514 U.S. 499, 508-509 (1995).  Retroactive changes in laws governing the parole of prisoners, in some instances, may violate the *Ex Post Facto* Clause.  *Garner*, 529 U.S. at 250; *Morales*, 514 U.S. at 508-09.

"[N]ot every retroactive procedural change creating a risk of affecting an inmate's terms or conditions of confinement is prohibited."  *Garner*, 529 U.S. at 250.  The question often is a "matter of degree," and is a particularly difficult question when the discretion vested in a parole board is taken into account. *Id.*, 529 U.S. at 250 & 253; *Morales*, 514 U.S. at 509.  The controlling inquiry is whether retroactive application of the law creates a significant risk of increasing the measure of punishment attached to the crime.  *Garner*, 529 U.S. at 250; *Morales*, 514 U.S.

at 509; *Biggs v. Sec. of Cal. Dept. of Correcs. and Rehab.*, 717 F.3d 678, 683 (9th Cir. 2013).   When a rule does not show a significant risk of increased punishment on its face, the prisoner must demonstrate, by evidence drawn from the agency's application of the rule, that it will result in longer periods of incarceration.  *Garner*, 529 U.S. at 255; *but see Biggs*, 717 F.3d at 692 (concluding that an "as-applied analysis" is not clearly established federal law).

## A.   <u>**Grounds for Relief Three and Four**</u>

In ground for relief three, petitioner alleges that "*Ex post facto* laws of State Sentencing Guidelines Board and *ex post facto* board rules are used to keep [him] in prison violating Article I, Section 10 of the United States Constitution."  Habeas Petition at 7.   Petitioner's supporting facts provide as follows:

> In 1989 Oregon Laws created a State Sentencing Guidelines Board.   Those laws and board rules implementing those laws ***were used to recind [sic] my parole release date and are still used to keep me in prison***.   State Sentencing Guideline Board claims a prisoner must prove rehabilitation after expiration of minimum sentence.  The former laws of the Advisory Commission on prison terms and parole standards allowed the board to release a prisoner after expiration of ranges of imprisonment adopted by the board.

*Id.* (*emphasis added*); *see also* Resp. Exh. 125 at 24.

Petitioner argues that the 1989 amendments to OAR Division 32, and the 1991 amendments to ORS 144.120 and OAR 255-32-005(1), created a significant risk of increased punishment because the

board no longer sets a "parole release date" for aggravated murderers and instead sets a "review date." According to petitioner, the *ex post facto* application of these amendments deprived him of his right to receive a parole release date, and his right to be released on parole on that date absent a statutory basis for postponement under ORS 144.125 (1977).

Initially, I agree with respondent that this ground for relief is untimely, under the one-year limitation period of 28 U.S.C. § 2244(d)(1)(D), because it pertains to board action first taken in 1990 (a decision petitioner received notice of on or about March 9, 1990, and unsuccessfully challenged in 1992). *See* Resp. Exh. 133 at 49); Pet.'s Memo. in Support at 33-34; *see also Mardesich v. Cate*, 668 F.3d 1164, 1172-73 (9th Cir. 2012) (limitation period begins to run when the prisoner received notice of board action, including any denial of an administrative appeal). The fact that petitioner continued to raise this argument at subsequent parole board hearings (*see* Pet.'s Supporting Memo. at 33-34), does not render timely his challenge *to the 1990 rescission of his parole release date.*

Even if ground for relief three is timely, it does not warrant habeas relief. As outlined above, at the time of petitioner's offense, ORS 163.105 (1977) provided that petitioner was not eligible for parole until he served 15 years of his 20-year minimum term. This was the applicable rule regardless of whether the board

16 -- FINDINGS AND RECOMMENDATION

also set a parole release date.  *After* serving his minimum term of incarceration, the statutory requirement that he demonstrate a likelihood of rehabilitation within a reasonable time continued. Because ORS 163.105(1) has continuously controlled petitioner's eligibility for parole, the 1990 rescission of his parole release date did not alter the date on which petitioner became eligible to seek parole, did not alter the requirement that he demonstrate a likelihood of rehabilitation before becoming eligible for parole, and did not otherwise create a risk of increased punishment.

In ground for relief four, petitioner alleges that he was deprived of due process because he remains in custody despite the fact that he has completed both his 20-year minimum term of imprisonment, and the matrix range of imprisonment set by the board on July 3, 1986.  This argument is premised upon petitioner's assertion that ORS 163.105 no longer applies to him because he completed his minimum term of incarceration.  Pet.'s Memo. in Support at 28-30 & 37-39.

The applicability of ORS 163.105 to petitioner is a question of state law which has been decided against petitioner.  As noted above, in *Larsen*, 191 Or. App. 526, the Oregon Court of Appeals concluded that ORS 163.105 continues to apply after an aggravated murderer serves his minimum term of confinement, and until he demonstrates that he is likely to be rehabilitated within a reasonable period of time.  This court is bound by the state

court's construction of state law.    *Himes v. Thompson*, 336 F.3d 848, 852 (9th Cir. 2003).

Moreover, the state cases upon which petitioner relies to argue that *Larsen*, 191 Or. App. 526, has been "invalidated,"[5] do not address whether an aggravated murderer shall be released prior to, or upon the satisfaction of, his minimum term of confinement *absent a finding that he is likely to be rehabilitated within a reasonable time.*    In any event, petitioner's argument that ORS 163.105 no longer applies to him because he has completed his minimum term of imprisonment is a state law claim that is not grounds for habeas relief.    *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Petitioner's suggestion that *Larsen*, 191 Or. App. 526, is "an unforeseeable judicial enlargement of a criminal statute" so as to violate the Due Process Clause does not warrant a contrary conclusion.    Pet.'s Memo. in Support at 39-40 (citing *Bouie v. City of Columbia*, 378 U.S. 347, 352 (1964)).    Petitioner did not raise this claim in his habeas petition, it is untimely given the fact that it challenges a 2004 state judicial decision, it is procedurally defaulted because it was not raised at the appellate or judicial levels of review, it relies upon a Supreme Court

---

[5]    *See e.g. Janowski/Fleming v. Bd. of Parole and Post-Prison Supervision*, 349 Or. 432, 245 P.3d 1270 (2010); *Severy/Wilson v. Bd. of Parole*, 349 Or. 461, 245 P.3d 119 (2010); *State ex rel. Engweiler v. Felton*, 350 Or. 592.

decision that is not applicable in this context,[6] and the Oregon Court of Appeals' decision was not unforeseeable or unexpected.

For all of these reasons, the state courts' rejection of petitioner's *ex post facto* and due process claims are neither contrary to, nor an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d)(1).

**B.   Ground for Relief Six**

Petitioner alleges that OAR 255-032-0020, is an *ex post facto* law in violation of Article I, Section 10, of the United States Constitution.   Petitioner's supporting facts for this ground for relief provide as follows:

> OAR 255-032-0020 sets ***criteria indicating rehabilitation***. It was adopted 15 years after petitioner was sentenced and is an *ex post facto* law used to increase petitioner's sentence.   It allows the board to apply the law in an arbitrary an[d] discriminatory manner, is standardless, and encourages ad hoc administration of both the board rule and the aggravated murder statute.

Habeas Petition at 8A (*emphasis added*).

Petitioner does not specifically address how the 1993 addition of criteria to guide the board's rehabilitation decision violates the *Ex Post Facto* Clause.[7]  On appeal from the board action,

_____

[6] *See U.S. v. Newman*, 203 F.3d 700, 702-03 (9th Cir. 2000) (finding *Bouie* inapplicable to judicial decision that impacted calculation of length of imprisonment rather than criminal liability); *Holgerson v. Knowles*, 309 F.3d 1200, 1202-03 (9th Cir. 2002)(*Bouie* inapplicable to sentencing range issues).

[7] Some of the difficulty in summarizing petitioner's

(continued...)

however, petitioner argued that the added criteria unconstitutionally expanded the scope of the hearing conducted pursuant to ORS 163.105(3) (1977). Resp. Exh. 125 at 29-32.

Petitioner has made no showing that the adoption of non-exclusive criteria for the board to apply in considering whether a prisoner is likely to be rehabilitated within a reasonable period of time created a significant risk of being denied parole eligibility under ORS 163.105. The standard "likely to be rehabilitated within a reasonable period of time" has remained consistent. Any impact the 1993 amendment to OAR 255-032-0020 may have on the board's discretionary decision under ORS 163.105(3) is speculative at best. *Peugh v. U.S.*, 133 S.Ct. 2072, 2082 (2013) (mere speculation that a change in law will retrospectively increase the punishment for a crime does not suffice to establish a *ex post facto* violation); *Garner*, 529 U.S. at 253 (parole discretion, by its very definition, is subject to changes in the manner it is exercised). Accordingly, the state court's rejection of this ground for relief is neither contrary to, nor an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d)(1).

///

---

[7](...continued)
arguments is caused by the fact that petitioner did not structure his argument to pertain to his individual grounds for relief.

## III. Ground for Relief One (Due Process)

In ground for relief one, petitioner alleges that he was denied an unbiased decision maker in violation of his right to due process because (1) Parole Board Chairman Steven Powers was employed as an assistant attorney general during the time that the Oregon Attorney General represented the board in *Larsen*, 206 Or. App. 353; and (2) Powers received *ex parte* communications and demonstrated his bias during his appearance before the State Senate Committee on the Judiciary addressing Senate Bill 288, which would remove administrative contested case hearing requirements for aggravated murder parole hearings.  Habeas Petition at 6; Pet.'s Memo. in Support at 52-54.

### A.   Factual Background

Following petitioner's February 28, 2007 parole hearing, petitioner filed a request for administrative review which included a due process claim regarding Chairman Powers' alleged bias.  Resp. Exh. 104 at 20-43.  The board rejected the claim in ARR #7.  Resp. Exh. 124 at 16.  Petitioner sought judicial review, and moved for the appointment of a special master to take evidence and make findings regarding, among other things, the conduct of Steven Powers.  Resp. Exh. 126; Pet.'s Memo. in Support, Exh. 1. Appellate Commissioner James Nass denied petitioner's request in an order which provides in pertinent part:

[T]he fact that the Board may have advocated for a change in procedure does not evidence an unfavorable predisposition as to the substantive issue before the Board - whether petitioner is capable of rehabilitation. That the Board, as a matter of policy, believed that the murder review hearings should be conducted in a certain way procedurally for all similarly situated offenders, including petitioner, does not show bias or prejudice against any particular offender.

\* \* \* \* \*

Next petitioner notes that the Board chair who presided over petitioner's murder review hearing, Steven Powers (Powers), was an Assistant Attorney General before he was appointed to the Board. Petitioner alleges that Powers represented the Board as an attorney in connection with *Larsen v. Board of Parole*, 206 Or App 353, 138 P3d 16 (2006) (*Larsen 1*), before he was appointed to the Board and suggests improper collusion between Powers and other assistant attorney generals. The mere fact that Powers formerly worked in the Attorney General's office is insufficient, in and of itself, to establish a violation of petitioner's due process rights . . . even if Powers did, in fact, have some involvement in the proceedings in *Larsen 1*. To show disqualifying bias in the context of an administrative proceeding, a petitioner has the burden of showing actual bias. The issue before the Board was whether petitioner was likely to be rehabilitated and thus was eligible for release under ORS 163.105(3). The facts alleged by petitioner do not tend to show that Powers was predisposed to decide that question in a certain fashion or that he was personally or financially biased against petitioner.

Resp. Exh. 126, App. 1-3 (*internal quotations omitted*). The Oregon Court of Appeals denied petitioner's motion for reconsideration, and the Oregon Supreme Court denied review. Resp. Exh. 126, App. 4 & Resp. Exh. 127; *see also* Resp. Exhs. 125, 130 & 132.

///

///

**B.  _Analysis_**

The Supreme Court has held that prisoners have limited due process rights in parole eligibility hearings. _Swarthout v. Cooke_, 131 S.Ct. 859, 862 (2011)(due process requires opportunity to be heard and statement of reasons); _see also Miller v. Oregon Bd. of Parole and Post-Prison Supervision_, 642 F.3d 711, 716 (9th Cir. 2011) (ORS 163.105(3) creates protected liberty interest).  The parties agree, and I assume, without deciding, that this includes the right to an impartial decisionmaker.  _O'Bremski v. Maass_, 915 F.2d 418, 422 (9th Cir. 1990).

Administrative adjudicators are presumed to act with honesty and integrity.  _See Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n_, 426 U.S. 482, 497 (1976).  "Mere familiarity with the facts of a case gained by an agency in the performance of its statutory role does not . . . disqualify a decisionmaker."  _Id._ at 493.  "Nor is a decisionmaker disqualified simply because he has taken a position, even in public, on a policy issue related to the dispute, in the absence of a showing that he is not capable of judging a particular controversy fairly on the basis of its own circumstances."  _Id._ (internal quotations omitted).

Petitioner has made no showing that any board member, including Board Chairman Powers, prejudged whether petitioner was likely to be rehabilitated within a reasonable period of time.

There is no evidence of actual bias, or that board members had a pecuniary or personal interest in the outcome of petitioner's parole hearing.    Chairman Powers was not disqualified simply because he testified at a Senate committee hearing or due to his employment at the Oregon Department of Justice at a time when petitioner's appeal was active.    Accordingly, the state court's rejection of this ground for relief is neither contrary to, nor an unreasonable application of, clearly established federal law.    *See* 28 U.S.C. § 2254(d)(1).

### CONCLUSION

Based on the foregoing, petitioner's petition for a writ of habeas corpus (#2) should be denied, and this proceeding should be dismissed, with prejudice.    Additionally, because petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability should be denied.    See 28 U.S.C. § 2253(c)(2).

### SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge.    Objections, if any, are due December 19, 2014.

///

///

///

///

24 -- FINDINGS AND RECOMMENDATION

If objections are filed, then a response is due January 5, 2015. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this __1st__ day of December, 2014.

Dennis J. Hubel
United States Magistrate Judge